Morning is Monroe v. Veterans Administration. Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, I am here on behalf of Mr. Philip Monroe. Mr. Monroe appeals a decision of the United States Court of Appeals for Veterans Claims and makes two arguments in this appeal. First, that the implicit denial rule should not be applied to informal claims created by the provisions of 38 CFR 3.157 v. 1 because the regulation requires explicit adjudication of such informal claims. And then the alternative, if the implicit rule does apply, that the Veterans Court misapplied it in this case. Mr. Monroe relies upon the fact that the regulation in this case was created by the VA for the express purpose of implementing the provisions of 38 U.S. CFR . . . May I interrupt you for just a second? You say that the regulation requires explicit adjudication? Yes. And what's the language that you're relying on there for that proposition from the regulation? Because the regulation indicates that certain documents as identified in the regulation constitute claims. If they constitute claims, those claims have to be adjudicated. When you say adjudicated, are you saying adjudicated as opposed to being implicitly denied? Yes, Your Honor. Because if you create a claim, the claim is entitled to a decision. If you create a claim by way of a VA regulation, then it follows that such a claim has to be addressed, has to be decided by the VA. Well, the same thing would be true of formal claims, wouldn't it? I'm sorry, Your Honor? The same thing would be true as to formal claims. Yes, but I think the difference is that a formal claim is initiated by the veteran, whereas this is a mechanism that was created by the VA itself in implementing its interpretation of the effective date statute, 5110. And in doing so, they specifically said that we're going to take certain documents that we receive during the and consider those to be informal claims under a specific set of circumstances, specifically if they indicate an entitlement to a benefit. And therefore, a benefit connected with a prior previously service-connected condition. That's right. In this case, we're dealing with the context only of the question of an entitlement to an increased rating. Mr. Monroe's condition was initially non-compensable for a respiratory condition, and ultimately it was decided in 2003 that the characterization made by the VA was too limited. How did he get service connection in 2003 after years of saying COPD is not service-connected, it's smoking-connected? Because there was a... Was it connected to the granuloma? Yes, Your Honor. So his granuloma at that point after years of not having a connection acquired one? Can you tell me about that? No, the medical evidence that was produced in 2003 clarified the relationship between the COPD and the granuloma. And it was the granuloma that got the service connection? That's correct. Not COPD? Well, it was a respiratory condition. His resulting disability was a respiratory condition. It was initially defined or classified, characterized by the VA as a granuloma, and limited to consideration of granuloma, and specifically in 1987 indicated that it was not the separate condition of COPD. COPD is simply an overarching description of problems with breathing, and that's what this veteran was service-connected for. The question in this case is whether or not the court properly used the implicit denial rule to circumvent the purposes of 3.157B. 3.157B, we believe, was created by the VA for a specific purpose, to facilitate for the veteran when there are VA medical records that raise a claim, that those claims will be adjudicated by the VA. And they will be adjudicated in this context, in the context of the determination of an effective date, which is consistent with the citation in the Federal Register to 5110. The court did state that there was nothing in the record, including the May 1995 record, that warranted an earlier effective date. That's what they said, Your Honor. Without having... There's nothing in the record. Why isn't that a sufficient finding for this? Yeah, why doesn't that control? Because it's conclusory in nature and does not specifically address the VA's burden to adjudicate under 3.157B. Well, suppose we reject that contention, that we hold that the implied denial rule applies to informal claims. Where are you then? Then we go to the question of whether or not under this court's decision in Adams, the November 1997 decision put Mr. Monroe on notice that the records that created this informal claim had been implicitly denied. Why wouldn't that be at least true with respect to what you characterize as the 1997 informal claim? Well, because, Your Honor, what the VA listed as the evidence was outpatient treatment reports from the Fargo VA Medical Center dated 3.1996 to April 17, 1997. So we do not know with specificity whether or not they did or didn't consider the April 1997 decision, but it is fair to infer that that record was in there. But when you say they didn't consider, you're talking about the RO or the board? The RO, that's correct. Well, the board considered it. The board did consider it, Your Honor, but they did not consider it in the context of whether or not... I'm sorry. The question is whether or not... The RO in 1997 considered the April 1997... And the May 1995 records. Clearly, they did not consider the May 1995 records. By implication, you may be able to conclude that they considered, or excuse me, by inference, you may be able to conclude that they considered the April 1997 because it's within that range. However, the question becomes whether or not... How is that an inference? I mean, they state directly a time frame that they considered and reject, and this falls within the time frame. Why is that just an inference? What strikes me is pretty clear consideration and dismissal. Right. And the question then becomes whether that put Mr. Monroe on notice. And if you turn to page, I believe it's 46 of the joint appendix... What's lacking about the notice? Well, the notice does not give you any indication... Excuse me, did not give Mr. Monroe any indication. It simply says, we did not find any evidence to suggest a change in the evaluation of your disability listed below. And it says your granuloma left lung remains 0% disabling. It does not say that we specifically considered and rejected the evidence that indicated that you were 100% disabled that was in that April 1997 record. Well, Adams doesn't require that, does he? Well, Adams requires reasonable notice. And I'm suggesting that this notice is not reasonable notice, that that April 1 document was considered in the context of unemployability. Now, if you read the rating decision, the rating decision does indicate that they considered it for extra scheduler. Where are we on the rating decision? At page 43 of the joint appendix, your honor. And at page 46, there's no reference to the unemployability determination that was made in the actual rating decision document. The notice document is at page 46 of the joint appendix. And it seems to me that under Adams, that this is not reasonable notice to him to put him on notice that a determination that he was not entitled to an extra scheduler rating was made and denied. It was, in fact, in the decision, but not in the notice. Well, let me take you back. It was, you say, it was in the decision. What exactly do you understand the decision to be adverting to with respect to the referenced in the second paragraph of the reasons and bases on 43? I don't know, your honor. I thought you were saying that they had alluded to, and I thought you were saying they alluded to the April 97 medical report here, but not in the decision? No, in the evidence section, your honor, where they give the range of the outpatient treatment report. So that's what you meant? That's what I was referring to, I'm sorry. So, so we, you think it's not a fair inference that that incorporates all of the outpatient reports with reference to? No, I'm saying that that is a reasonable inference. The question then becomes when you go to page 46 as to the notice. Did he get a copy of the document that said 43? The record does not reflect that. But that would be what would be attached to the document 46, right? The rating decision goes to the veteran, right? Typically. It says enclosure rating. Yes, on page 47 it does, your honor, that's correct. So he got it? Yes, he got that, and then it would be a question as to whether or not it was reasonable for him to understand the language in this decision as it then relates to the notice that he got that he was denied implicitly an entitlement to unemployability. But that's separate from the scheduler consideration of the May 1995 record, which goes to the scheduler criteria. And it was the scheduler criteria in 2003 that was initially kicked up from 0% to 60%, and then later in 2003 granted unemployability based upon that scheduler assignment. Mr. Carpenter, here's what concerns me, and correct me if I'm misapprehending your position, but it seems like you're saying that if someone has, they've already got service connection, and they think their condition has been exacerbated over the course of time or whatever, and they have six different trips to the VA Medical Center for outpatient care, and in each one of them, the physician says, well, you're really, you're not, you don't have this condition, or you might be getting a little worse in this regard, but there are varying results in those six trips. And then he files a claim at the end of that, and he says, well, the evidence is that I've gotten worse. And he points to some things in the records. Do those independently become informal claims, those of them that indicate some exacerbation, or do they all get encompassed within his formal claim, which relies on them? Well, I think in this case, if those records within the parameters of, what is it, March 97 to September of 97, those, I think, were explicitly adjudicated as to the question of scheduler rating, and as you suggest, in this decision, they rejected the condition as being separate in the COPD from the service-connected condition, and that was the basis of their decision. They acknowledged that his COPD was severe, had real problems, but that's unrelated, according to this decision, to his service-connected disability. Well, I guess I'm asking really a more general question, and that is, are you suggesting that when the RO decides one of these cases in which there have been multiple visits to the doctor with different results, that the RO has to say, number one, that we reject your formal claim, but we also reject each of the informal claims, which is assumed to have been the product of each of these medical reports? No, Your Honor, except when they raise a specific entitlement, as this April 97 does. The April 97 specifically raised an entitlement to a total rating. You mean because the doctor wrote he is totally disabled? That's correct. But the 95? And you're dealing with somebody who has a non-compensable rating, and the VA took the position that the doctor's opinion was based upon the severity of his COPD. But the importance in this case is twofold. First, in 2003, you get the clarifying medical evidence that resolves the question of what the nature of this veteran's disability is. The question then becomes, how is the veteran able or not able to utilize the benefits of 3.157 for purposes of the assignment of an effective date? Thank you, Mr. Carpenter. I see you've used most of your time. Could you give Mr. Hockey an additional two minutes if he needs to use it, and we'll give Mr. Carpenter a few minutes of rebuttal. You may proceed, Mr. Hockey. May I please, the Court? First, Dr. Bryson, I'll answer your question that you asked at the end. The answer is it depends on whether or not the formal claim is granted. So that if you had somebody that went in six times over the course of a year or longer and got medical examinations, when it came time to determine what the effective date was— You go back to the first trip to the doctor. It could be, as long as you've fulfilled the one-year requirement within 5110. But that's where it would be significant. But if it's denied, that would— It's an entirely different story. These don't become a group of informal claims that need to be separately addressed, I take it. How would you characterize what happens with respect to those doctors' reports in the context of the informal claim? Well, like in this case, those doctors' reports at the time of the final decision in 1997 were just evidence supporting his September 1997 claim. It's only because of what occurred in 2003 that we now see that the documents that were in 1997 considered evidence—not sufficient evidence, but evidence in support of a claim— are now looked at because in 2003, now he's service-connected with a higher— Well, he was service-connected, but he's got a higher rating and an extra scheduler award of 100%. Well, the problem with that is that the Veterans Court didn't decide the case on that ground. They said even if these are informal claims, they were implicitly denied, so don't we have to address it on that basis? Well, yes, we do believe that the claims were implicitly denied. But that's the sole ground for the Veterans Court's decision. Exactly. They didn't say that these aren't informal claims. No, they were—the board said that they were not informal claims. The argument raised by— Well, the board didn't consider the 1995 one. No, that wasn't raised to the board. But the argument that was presented to the court was that, no, they were formal claims because—and the Veterans Court said, well, even if you're right and you say that they were informal claims, the implicit denial rule is triggered. So we have to review it on that basis now. And we think that the Veterans Court correctly applied the implicit denial rule. So frankly— Except with respect to the 95. I'm glad you brought that up, Your Honor. Are you going to change your position? That's where you were going. Preparing for the argument when I had an opportunity to review the record, I couldn't understand why we distinguish that, obviously, as the court is aware, Adams focuses on the notice that goes to the veteran, whether or not the VA considered something to be a formal or an informal claim. So if the decision is that the notice was sufficient, which, by the way, we consider to be an issue that, although suggested by counsel this morning as being before the court, we think that the court doesn't have jurisdiction to second-guess a notice finding by the Veterans Court. But certainly, the focal point of the analysis from Adams and Williams is, was there a decision at some point that provided the veteran with a sufficient notice such that he would have been aware that any other pending claims that he might have thought he had were adjudicated? And he should then take the matter up before the board. So your position now is that this 1997 decision did give adequate notice with respect to the assumed 1995? We think— Right. Given— We think that the application of the implicit denial rule does not require the VA to actually be aware of the 1995 document. The point would be— As long as it's the same claim. As long as it's the same claim, which the Veterans Court found that it was, and that there was sufficient notice in the formal claim. And I just want to add before I forget— Well, wait. One doc— Let me make sure that I understand this. You say that the Veterans Court found it was the same claim? Well, they found that the notice that was contained in the November 1997 claim would have informed the veteran that if he had any requests for an increased schedule based upon his granuloma, whether an increased rating based upon his granuloma, whether scheduled or non-scheduled or based, he was provided with notice that that would have been denied in the November 1997 decision. And that would have encompassed this— Right. Because the argument— See, it's a little confusing. Frankly— It's a lot confusing. Well, what probably— Here's my little speech, I think. Let's kind of try to avoid it. You know, when the veteran goes to try to get connection for his lung disability, or not service connection, but get some kind of payment for his lung disability throughout the 90s, he's told that he's suffering from COPD— And that doesn't have anything to do with his granuloma. Doesn't have anything to do with his granuloma. In 2003, medical evidence suggested that perhaps there was a relationship. And so, therefore, the veteran actually— At least contributory. At least contributory. And so, that was the basis for the increased rating and the non-scheduler award, or extra-scheduler award. And so, at that point, the veteran asked himself, well, if that's the case, why wasn't I given this back in the 90s? It's a fair question. And the answer could be, we don't think it would be, but it could be that there was some sort of error contained in those decisions. We don't think it would be error because, frankly, medical evidence can change. And so, it's perfectly logical that somebody could look at a situation and say there's no connection, and somebody might look at it later on and say, well, maybe there is a connection. And certainly, if there's any benefit of the doubt, he may have been granted that benefit of the doubt in 2003. But the resolution of that kind of a question would seem to me to be, well, is there a mistake made in the earlier decisions? But that's, as the court knows, a difficult burden to establish, the clear and unmistakable error burden. So, in this case, what we have is some medical evidence that was considered in the form of the April 1997 document in reviewing a September 1997 claim and leading to a November 1997 regional office decision. And so, the suggestion is, well, we have this sort of unadjudicated pending claim doctrine out there. That could be a basis for an earlier effective date as opposed to trying to establish Q. And so, that sort of maybe is what's going on. And what we have in response to that is, well, yes, maybe. But in this case, you actually have a decision in November 1997 on the very issue. And it says, no, you don't get either scheduler or extra scheduler relief. And I want to just point out the one document we haven't talked about at all today is the actual claim document, which is at 108. And there was some discussion earlier in the morning about, well, you know, he's making this argument in April 1997 about extra scheduler relief. And, you know, it is true that the extra scheduler relief is referenced on page 43 of the final decision. But to show that he's really asking for the same thing, the April 1997 document is really the same as his September 1997 claim, where he formally asks for the same thing. He says, I've gotten worse, and I think I'm totally disabled. So when read, although we have said that this is really one issue for the Court of Veterans Claims, but when you want to read the record and gain some understanding of where the Veterans Court was coming from, there can't really be any dispute on this record that in September 1997, he's asking for the same kind of thing that the April 1997 document would have suggested by its content. April 95? Well, both, April 1997 and April. Well, May, the 97 is May, right? There's May 1995 and April 1997. Well, May, yeah, May 95 and April 97. Oh, correct. What's interesting about this claim document on 108 is that he says, I request any outpatient records for the period 1993 to 1997. So you might read that as saying, I'm encompassing all those records within my time. Well, and that led to the requesting of the records. I mean, the request is actually on the next page, where VA asks Fort Meade to send them the records. And those are the records that are identified, you know, well, the 96 to 97 period were identified on the rating decision. Well, what happened to the record? Do we know what happened to the record of the 95 medical procedure? Well, eventually it got to the reviewing people. Was that, that was not before the R.O. in 97? It does not appear to be before the R.O. in 97. Despite the fact that that would have been encompassed within the scope of the request. Right. Or, you know, based upon the records, it appears that they didn't have it. So, and which would lead us to our sort of conservative approach in our brief with respect to, you know, tying in the May 95 record. But when you look at Adams, the rationale is notice to the veteran, not what VA had in its possession or whether the VA considered it to be an informal claim. Well, so if he asks for the records from 1993 to 1997, even if erroneously, they don't produce the 1995 record, the 1995 record in theory could be encompassed within the scope of that formal claim. You would think. I mean, as far as the identification of, this is the sort of situation he's in. He's formally asking for the same relief in September 97. As he suggests, he was asking for informally, both in April of 97 and in May of 95. You know, he's asking for a scheduler and non-scheduler. But the point I'm making is, if you look at the question is notice to the veteran, if the veteran says, here's my formal claim, I ask you to get the records from 1993 to 1997, that's denied, you know. Oh, right. Maybe the veteran should assume that that encompasses a record from 1995 as well. That's correct. Even though erroneously, perhaps, erroneously, they didn't consider. Right. Well, the idea being exactly, you're right, Your Honor. And the idea being that at that point then, and this is where the implicit denial rule is, his choice is to go to the board at that point and seek relief. The whole point of the denial is, you know, was he provided with sufficient notice to know that whatever claim he thought he had pending was addressed by the regional office. And in this case, on this record, it was. So we think this is, frankly, an almost a straightforward application of Adams and the court could very well dismiss the case for application of law to fact. Thank you, Mr. Hawking. Thank you. Arpender, you have a little over two minutes. Thank you, Your Honor. So, the May 1995 record is a VA record. When you said- But he asked, he asked them to get the VA record. So why wouldn't he think that that was encompassed within the claim? And if he thought they should have gotten a 1995 record and didn't, he could have complained about that by going to the board. And he could have, if the implicit denial rule applies to 3.157B informal claims. And that's the question, that's the first argument that's presented in this case. Does 3.157B place an affirmative burden on the VA to make an adjudication of its own records when those records implicate entitlement to a benefit? And those records in May of 1995 did, and there was no explicit adjudication of that VA medical record. Well, if that's- If we disagree with you on that point and we conclude that the implied denial rule does apply to informal claims, where does that leave you? It puts us then in the position of what was he on reasonable notice of? And then you have to look at the 1997 decision which limits the scope of the evidence from, what is it, March 1997 to September 1997, obviously excluding the May 1995 record. And therefore, the only way that you can do that is by further reading into it based upon his request that you get the records all the way back to 1993, that he was then on notice that they didn't get the May 1995. So your argument in response to Mr. Hockey then is that there is no basis for inferring that there's a denial of the 95- Of the 95. Because of the reference to the dates of the evidence considered. That's correct, Your Honor. And further, because in order to be able to make that inference, you have to assume that the veteran knew about the existence of the May 1995 record. And that's the importance of the VA's own regulation because it's that regulation that makes it a claim with or without his September 1997 claim that asks for consideration of evidence from 1993 forward. I see that I'm out of time. Thank you very much, Your Honor. Thank you, Mr. Carpenter. Our next case is Ad Hoc Shrink Trade Action Committee versus the United States.